IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RONALD VICTOR SEVILLA,

        Plaintiff,                 CV F 06 0172 LJO WMW PC

    vs.                              ORDER

CAL TERHUNE, et al.,

        Defendants.

      Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation at the California Substance Abuse Treatment Facility at Corcoran, brings this civil rights action against defendant correctional officials employed by the CDCR atC SATF.  This action proceeds on the January 11, 2007, third amended complaint.

      Plaintiff names the following defendants: Cal Terhune, former Director of the CDCR; El Alemeida, Director of the CDCR; Suzanne Steinberg, Director of Health Services; Darrel Adams, SATF Warden; Associate Warden S. Sherman; N. Grannis, Chief of Inmate Appeals Branch; Chief Medical Officer Edgar Castillo; Dr. Nguyen, M.D.; Gilbert V. Gonzales, M.D.; Nandan Bhatt, M.D.; Nurse Amy Bradish; Medical Technical Assistant (MTA) Roscoe; MTA Shaw; Correctional Officer (C/O) McKesson; SergeantT. Holmes.  The allegations of the third amended complaint follow.

Plaintiff suffers from a degenerative disk disease. This condition is related to an work injury suffered by Plaintiff in 1978 while at San Quentin State Prison. Am. Compl., ¶ 20.

On August 30, 1999, Plaintiff suffered a "muscle attack," and fell, striking the ground with his right foot. Plaintiff attempts at seeing a doctor, RN or MTA were denied. Plaintiff showed the tower guard his bleeding foot. The guard informed Plaintiff that the MTA refused to see him, because he had been seen two weeks prior. Plaintiff does not identify the MTA. Id. ¶ 23.

On September 16, 1999, Plaintiff filed a written grievance, "explaining his severe pain, injury, additional injuries, at all levels refused to see, treat, or care for plaintiff well documented injury." As a result, Dr. Nguyen was ordered to examine Plaintiff in March of 2000. Plaintiff alleges that "examiner J. Stocker found the medical examination committed to on appeal did not occur." Id. ¶ 25.

Plaintiff alleges generally that he was retaliated against by medical staff. Plaintiff alleges that for the next two years, he was singled out as a troublemaker and refused treatment. Plaintiff also alleges that all treatment was delayed, then refused. Plaintiff does not identify any individuals or charge any particular individual with specific conduct. Id. ¶ 26.

On May of 2002, Plaintiff was prescribed medication by Dr. Dunn and Dr. Kumar. The prescription was denied by unspecified nurses and MTAs. Plaintiff filed an inmate grievance. At the Director's level, Defendant Grannis "covered up the civil rights violation and denied Plaintiff's appeal." Id. ¶ 29.

On May 12, 2003, Plaintiff was interviewed by Dr. Gonzales. Plaintiff was allegedly told by Dr. Gonzales that, as a Mexican, he should be able to take more pain. Plaintiff alleges that "as punishment," Dr. Gonzales ordered mind altering medication. Plaintiff filed an inmate grievance. At the Director's level, Defendant Grannis noted the following: "Dr. Snow's position that the appellant might benefit from physical therapy or steroid injections." Plaintiff was sent

for an appointment with a Dr. Mensink, a neurologist June 24, 2003.  But the MRI was not sent to the neurologist, so the evaluation did not occur and was not rescheduled.   Plaintiff was also scheduled for an appointment with Dr. Friedman on April 25, 2003, but did not occur.  Id. ¶ 30.

Plaintiff underwent surgery on October 7, 2003.  Plaintiff alleges that "SATF SP failed to follow-up treatment, plaintiff spine escalated causing additional injuries." Id. ¶ 33.

On November 4, 2003, Defendant Dr. Gonzales again prescribed a mental mind altering medication, telling Plaintiff it was for pain.  Two days later, Plaintiff suffered a severe headache and dizziness. Plaintiff also suffered from back pain.  Id. ¶ 34.  Plaintiff approached MTA Shaw on the yard and "explained the pain in his back."  MTA Shaw told Plaintiff to submit a health care service form.  Id. ¶ 35.

Plaintiff submitted a health care form.  "After suffering in great pain," Plaintiff was referred "to the psychology."  Because Plaintiff was on "mental medication," he was referred to Dr. Gonzales, who refused to properly treat Plaintiff.   In January of 2004, an X-ray at an outside hospital revealed the damage to his spine.  Dr. Rhamifar advised that Plaintiff should have surgery right away.  "The doctors" at SATF refused Plaintiff the needed surgery.  Id. ¶ 36.

Plaintiff filed an inmate grievance, which resulted in a decision that "recommendation for medication was granted."  Plaintiff alleges that "the well documented operation was denied."  Id. ¶ 37.  Plaintiff alleges that Dr. Friedman failed to treat him and Dr. Bhatt's treatment resulted in a weakening of his condition, "causing so much damage that additional damages were found, the damage cause paralysis and surgery at the neck area was necessary C5-C6 operation occurred in or about January 2005."  Id. ¶ 38.

Plaintiff alleges generally that Defendant McKesson retaliated against Plaintiff by discrimination on the basis of Plaintiff's disability.  Specifically, on January 23, 2006, McKesson entered Plaintiff's cell and "took Plaintiff typewriter, stating 'no one going to do legal work' against me and get away with it.  C/O McKesson then took Plaintiff's T.V., fan, radio and

personal property. C/O McKesson threaten Plaintiff.," Id. ¶ 42. On January 26, 2006, McKesson removed Plaintiff from his prison job "for no reason," then moved Plaintiff out of his cell. Id. ¶ 43.

The balance of the third amended complaint consists of allegations regarding the CDCR in general. Plaintiff refers to media reports placing the CDCR health care system into federal receivership, and refers to rulings by U.S. District Judge Thelton Henderson. Though Plaintiff contends that CDCR policies affect him, he does not charge any individual defendant with specific conduct that is actionable under 42 U.S.C. § 1983.

Under the Eighth Amendment, the government has an obligation to provide medical care to those who are incarcerated. See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000). "In order to violate the Eighth Amendment proscription against cruel and unusual punishment, there must be a 'deliberate indifference to serious medical needs of prisoners.'" Id. (quoting Estelle v. Gamble, 429 U.S. 97. 104 (1976)). Lopez takes a two-prong approach to evaluating whether medical care, or lack thereof, rises to the level of "deliberate indifference." First, a court must examine whether the plaintiff's medical needs were serious. See Id. Second, a court must determine whether "officials intentionally interfered with [the plaintiff's] medical treatment." Id. at 1132.

## Medical Care Claims

Under the Eighth Amendment, the government has an obligation to provide medical care to those who are incarcerated. See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000). "In order to violate the Eighth Amendment proscription against cruel and unusual punishment, there must be a 'deliberate indifference to serious medical needs of prisoners.'" Id. (quoting Estelle v. Gamble, 429 U.S. 97. 104 (1976)). Lopez takes a two-prong approach to evaluating whether medical care, or lack thereof, rises to the level of "deliberate indifference." First, a court must examine whether the plaintiff's medical needs were serious. See Id. Second, a court must

determine whether "officials intentionally interfered with [the plaintiff's] medical treatment." Id. at 1132.

The bulk of Plaintiff's third amended complaint contains conclusory allegations. Plaintiff frequently alleges that treatment was ordered, but did not occur. In order to hold an individual defedant liable, Plaintiff must allege facts indicating that defendant knew of and disregarded serious risk to Plaintiff's health, resulting in injury to Plaintiff. That a particular treatment or therapy did not occur does not, of itself, subject a particular defendant to liability. Plaintiff must allege specific facts as to each defendant.

Liberally construed, the third amended complaint states a claim against Defendants Gonzales, Friedman and Bhatt for deliberate indifference to a serious medical need of Plaintiff's. As to the remaining Defendants, Plaintiff has not charged them with specific conduct that constitutes deliberate indifference as that term is defined above. The Court will grant Plaintiff leave to file a fourth amended complaint. Should Plaintiff fail to do so, this action will proceed on the third amended complaint against Defendants Friedman, Gonzales and Bhatt on Plaintiff's deliberate indifference claim.

### Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his first amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). See also Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)(explaining that a plaintiff must plead facts which suggest "that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision") (citation ommitted).

Though Plaintiff has alleged that McKesson took adverse action against him because of

his protected activity, he has not alleged any facts indicating how the exercise of his first amendment rights were chilled.  That McKesson confiscated personal property of Plaintiff's does not, of itself, subject him to liability for retaliation.  Plaintiff must allege facts that satisfy the standard set forth above.  Plaintiff has failed to do so.  These claims must therefore be dismissed.

The Court will grant Plaintiff leave to file a fourth amended complaint.  Should Plaintiff fail to do so, this action will proceed on the third amended complaint against Defendants Bhatt, Gonzales and Friedman on Plaintiff's claim of deliberate indifference.  The remaining claims and defendants will be dismissed.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  Also, the complaint must allege in specific terms how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete.  Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff is granted thirty days from the date of service of this order to file a fourth amended complaint that complies with the requirements of the Civil Rights Act, the

1  Federal Rules of Civil Procedure, and the Local Rules of Practice; the amended complaint must
2  bear the docket number assigned this case and must be labeled "Fourth Amended Complaint."
3
4  IT IS SO ORDERED.
5  **Dated:    March 10, 2008**                    /s/  **William M. Wunderlich**
                                                   UNITED STATES MAGISTRATE JUDGE