# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD VICTOR SEVILLA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DERRAL ADAMS, et al.,<br><br>　　　　Defendants.<br>_____/ | CASE NO. 1:06-cv-00172-LJO-SMS PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING ACTION PROCEED ON FIFTH AMENDED COMPLAINT AGAINST DEFENDANTS BRADISH, ROSCOE, GONZALES, AND BHATT FOR VIOLATION OF THE EIGHTH AMENDMENT, AND THE OTHER CLAIMS AND DEFENDANTS BE DISMISSED<br><br>(Doc. 56)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

**Findings and Recommending Following Screening of Fifth Amended Complaint**

**I.    Screening Requirement**

Plaintiff Ronald Victor Sevilla, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on February 16, 2006. Plaintiff, who is currently incarcerated at High Desert State Prison in Susanville, brings this suit against prison officials at the California Substance Abuse Treatment Facility and State Prison (SATF) in Corcoran for violating his rights between 1999 and 2004 while he was housed at SATF. Now pending before the Court is Plaintiff's fifth amended complaint, filed May 18, 2009.[1]

---

[1] Plaintiff amended four times. What was actually Plaintiff's first amendment was entitled a second amended complaint and docketed as such, and Plaintiff's subsequent complaints were entitled third, fourth, and fifth amended complaints and docketed accordingly. In order to avoid creating additional confusion of the record, the current docket entries will remain but the Court notes that the fifth amended complaint currently pending before it is really the fourth amendment.

1

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). "[P]laintiffs [now] face a higher burden of pleadings facts . . ," Al-Kidd v. Ashcroft, 580 F.3d 949, 977 (9th Cir. 2009), *petition for cert. filed*, 79 U.S.L.W. 3062 (U.S. Jul. 16, 2010) (No. 10-98), and while a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To state a viable claim for relief, Plaintiff must set forth factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal at 1949-50.

**II.    Plaintiff's Claims**

    **A.    Eighth Amendment Medical Care Claims**

        **1.    Defendant Nguyen**

            **a.    Allegations**

Plaintiff injured his spine in 1978 and suffers from degenerative disc disease as a result. Plaintiff experiences severe nerve pain, chronic lower back pain, and torturous leg cramps on a daily basis. Plaintiff's medical condition is well-documented and he has been treated over the past twenty

2

1 years with every type of pain reliever and muscle relaxant.  On August 1, 1999, Defendant Nguyen, a prison physician, interviewed Plaintiff and acknowledged his medical condition, but failed to "properly treat" Plaintiff.  (Doc. 56, 5th Amend. Comp., p. 3.)

On August 30, 1999, Plaintiff was walking across the yard when he developed a torturous leg cramp and fell to the ground so hard that his toenail broke off.  Bleeding, Plaintiff walked to the control tower and requested medical attention.  Plaintiff was told that Defendant Nguyen would not see him because he was seen two weeks ago.  Plaintiff was ordered to return to his cell without any medical care.  Plaintiff made numerous attempts to see a doctor over the next few weeks, but his health care services request forms were denied.  Plaintiff contends that he did not see Defendant Nguyen after the August 1, 1999, appointment and did not receive proper medical care until 2002.

### b. Legal Standard

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).

A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

    **c.**  **Discussion**

  Assuming that the control tower officer specifically informed the medical clinic that Plaintiff had fallen on the yard and was bleeding from a broken toenail, there is no indication this was a serious medical need requiring immediate attention. Doty v. County of Lassen, 37 F.3d 540, 546 n.3 (9th Cir. 1994) (citation omitted). Further, there are no specific facts supporting a claim that Defendant Nguyen knowingly disregarded an excessive risk to Plaintiff's health by failing to see him on August 30, 1999, Farmer, 511 U.S. at 837, or that the delay resulting from the refusal to see Plaintiff on August 30, 1999, caused Plaintiff any further harm, McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)). Because Plaintiff's factual allegations do not support a facially plausible claim against Defendant Nguyen for violation of the Eighth Amendment, the Court recommends dismissal of the claim. Iqbal at 1949-50.

    **2.**  **Defendants Bradish and Roscoe**

  On March 26, 2002, Dr. Kumar prescribed Plaintiff "proper" medical treatment, but Defendant Bradish, a registered nurse, denied Plaintiff the prescribed pain reliever and muscle relaxant for more than a year, keeping the medications for her own personal use. (5th Amend. Comp., p. 4.) Plaintiff attempted to explain his need for the medications to treat his chronic pain, but Defendant Bradish said she did not care. When Plaintiff showed Defendant Bradish a letter from the Director's Office stating he should be receiving the medications, she said she did not know who took his medication but it was not she.

  On May 29, 2002, Plaintiff fell from a leg cramp, cutting his arms and legs. Defendant Roscoe, a registered nurse, treated the cuts, but told Plaintiff he was still not getting his medication. Plaintiff contends that Defendant Roscoe took his prescription medication for her own use, leaving him to suffer more than a year.

  Plaintiff's allegations that Defendants Bradish and Roscoe took his prescription medications for their own use, leaving him without his pain reliever and muscle relaxant for more than a year, are sufficient to state a claim under section 1983.

///

///

### 3. Defendants Gonzales and Bhatt

#### a. Allegations

In May 2003, Plaintiff told Defendant Gonzales, a physician, during an interview that he was suffering from chronic pain, severe nerve damage, and torturous leg cramps. Defendant Gonzales told Plaintiff that he was not going to prescribe pain medication, and that Plaintiff was a Mexican and Mexicans can tolerate more pain than other people. Defendant Gonzales mentioned Plaintiff's appeals and prescribed a "mental medication" for Plaintiff as punishment. (5th Amend. Comp., p. 4.) Plaintiff was also concerned that he was now suffering from Hepatitis C, but Defendant Gonzales said it was too early to treat Plaintiff's Hepatitis C.

Although unknown to him at the time, Defendant Gonzales prescribed quinine, a "toxic poisonous medication," for Plaintiff, which caused severe, permanent damage to Plaintiff's health. (Id.)

On October 3, 2003, Plaintiff underwent spinal surgery at Mercy Hospital in Bakersfield. When Plaintiff was returned to the prison, Defendant Gonzales took him off of his pain medication and put him on a mental health medication, against Gonzales's supervisor's order. Defendant Gonzales told Plaintiff the medication was for pain and on the second day, Plaintiff suffered a reaction to the medication. Plaintiff was unable to concentrate, and felt dizzy and confused, which caused him to lean forward, whereupon he immediately felt torturous pain in his lower spine that increased with every movement. Plaintiff made his way to the clinic and told Shaw, a medical technical assistant, what had happened. Shaw knew Plaintiff had just had spinal surgery but she refused to see him and ordered him away.

Three weeks later, Plaintiff was interviewed by a psychiatrist because the most recent medication prescribed for Plaintiff was the mental health medication. The psychiatrist understood Plaintiff's situation, gave him a mental health clearance, and ordered a nurse to place him on the doctor's line.

Defendant Gonzales refused to treat Plaintiff, however, and it was not until three months later during a follow-up appointment at Mercy Hospital on January 27, 2004, that x-rays confirmed Plaintiff had sustained additional damage to his spine. Emergency surgery and pain medication were

5

recommended. Defendant Gonzales denied the recommended treatment, stating that the surgery and pain medication would cost too much money, and continued to prescribe the quinine. Defendant Gonzales also reiterated that it was too early to treat Plaintiff's Hepatitis C. Plaintiff told Defendant Gonzales something was affecting his health and he showed Defendant his aching body, which was swollen with red and blue sores. Plaintiff complained that he always felt exhausted, weak, ill and distressed; that he was losing weight; and that his body was so sensitive that the water from the shower made his body ache. Defendant Gonzales told him he would be alright. Plaintiff alleges he could not walk without assistance, was unable to exercise, could not participate in daily activities, and unnecessarily suffered torturous chronic pain and leg cramps, even though relief was available.

In March 2004, Defendant Bhatt, a physician, interviewed Plaintiff regarding his concerns, including Plaintiff's failed surgery, Hepatitis C, and illness. Plaintiff explained to Defendant Bhatt that he cut himself shaving and his blood would not coagulate. Plaintiff tried to get Defendant Bhatt to understand the severity of his swollen red and blue sores, and his difficulty breathing. Defendant Bhatt said something was causing Plaintiff's blood cell count to degenerate because it was way too low, and Plaintiff's health was in danger, but he denied treatment for the Hepatitis C, said the cure for Plaintiff's damaged spine was too expensive, and said he did not know why Plaintiff's blood cells were dying. Defendant Bhatt refused to prescribe the medications that had been recommended, so he again prescribed quinine and said that was all he could do.

Plaintiff filed an appeal requesting the surgery to cure his spinal problem, and complained about his sore, swollen body but his appeals were denied. Plaintiff's body was weakened; his spinal damage was increasing, causing paralysis; and the quinine was causing him to suffer delusions which led him to make accusations, including against the court. Plaintiff needed emergency surgery to correct the paralysis, which was caused by the pinching of his superior cervical ganglion at C5-C6, but if he was cut, he would die. The issue was discussed with Defendant Bhatt, who said that was the chance Plaintiff would have to take.

Plaintiff was sent to Mercy Hospital on October 5, 2004, for herniated nucleus pulposus surgery. Plaintiff told the neurosurgeon that his blood was not coagulating and any little contact caused his body to bleed internally, leaving a red and blue sore. Plaintiff was sent to hematology,

6

where it was confirmed that he would most likely die if operated on. The neurosurgeon cancelled the surgery and treatment for the damage to Plaintiff's blood began. Plaintiff was asked if he was taking quinine and when he said yes, he was told a human being can only take quinine for thirty days and that all doctors know that. Plaintiff, who had been on quinine for more than a year, contends that to cover up for his misconduct, Defendant Bhatt had Plaintiff returned to the institution three days later, over doctors' strong objections.

On December 3, 2007, Plaintiff was hospitalized due to the poison in his blood and a specialist treated Plaintiff for many days, telling Plaintiff that his blood was badly damaged and there was nothing they could do. Plaintiff's blood would not mix with anyone else's blood and all they could do was wait to see if Plaintiff got well or died. The specialist told Plaintiff that if he died, the cause would be quinine poisoning from having been on the medication too long.

Plaintiff alleges that although he survived, his antibodies are developing into killings cells which are attacking his red and white blood cells, and the condition is permanent. Plaintiff alleges he constantly feels weak and ill, and is in chronic pain from his damaged spine, which causes severe nerve pain, leg cramps, and neck pain, affecting his shoulders, arms, and hands. Plaintiff contends that he has sustained permanent injury to his health and remains in pain because prison officials will not provide him with proper treatment. Plaintiff contends that Defendants Gonzales and Bhatt knowingly endangered his health, and that the progressive form of leukemia he developed could have been stopped had the quinine been discontinued and the proper treatment recommended by other doctors been provided.

**b.     Discussion**

"[T]he existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, . . . the presence of a medical condition that significantly affects an individual's daily activities, and . . . the existence of chronic or substantial pain" are indications of a serious medical need, Doty, 37 F.3d at 546 n.3 (citing McGuckin at 1059-1060); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000), and a *complete* denial of medical care is not required to show deliberate indifference, Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) (emphasis added). "The Eighth Amendment requires that prison officials provide a system of ready access to adequate

7

medical care." Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). "[M]edical staff must be competent to examine prisoners and diagnose illnesses," and must either "be able to treat medical problems or to refer prisoners to others who can." Id. Further, treatment decisions based on budgetary concerns do not shield prison officials from liability for deliberate indifference. Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986).

Plaintiff's allegations are sufficient to state claims against Defendants Gonzales and Bhatt. Plaintiff has more than adequately alleged the existence of serious medical needs and the deliberate indifference of Defendants Gonzales and Bhatt to those needs.

### 4. Defendants Castillo, Adams, Steinberg, and Alameida

Plaintiff seeks to pursue claims against Chief Medical Officer Edgar Castillo, Warden Derral Adams, California Department of Corrections and Rehabilitation (CDCR) Health Services Director Suzan Steinberg, and CDCR Director Ed Alameida. Plaintiff alleges that he wrote them letters and they were aware of the problems plaguing the prison's medical department.

Under section 1983, Plaintiff is required to prove that (1) each defendant acted under color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). Plaintiff must prove that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There is no respondeat superior liability under section 1983, Iqbal at 1948-49, and a supervisor may be held liable for the constitutional violations of his or her subordinates only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); also Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff's fifth amended complaint states cognizable claims for relief against Defendants Bradish and Roscoe for depriving Plaintiff of his pain medication and muscle relaxants for more than a year; and against Defendants Gonzales and Bhatt for their involvement in failing to ensure Plaintiff received proper medical care for his spinal injury and other ailments, and for causing Plaintiff serious and permanent harm due to quinine poisoning. Plaintiff's fifth amended complaint is devoid of any

8

specific facts linking Defendants Castillo, Adams, Steinberg, and Alameida to personal participation in these violations, to the failure to stop the violations despite awareness of the violations, or to the enactment or enforcement of a policy that was the moving force behind the violations. Therefore, Plaintiff fails to state a facially plausible claim for relief against Defendants Castillo, Adams, Steinberg, and Alameida. Iqbal at 1949-50.

### B.     Section 845.6 Claim

Plaintiff alleges a claim for violation of section 845.6 of the California Government Code, which provides that "a public employee . . . is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Cal. Gov't Code § 845.6 (West 2010). "[T]o state a claim under § 845.6, a prisoner must establish three elements: (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summons such care." Jett v. Penner, 439 F.3d 1091, 1099 (9th Cir. 2006). "Liability . . . is limited to serious and obvious medical conditions requiring immediate care," Watson, 21 Cal. App. 4th at 841 (citations omitted), and the "section does *not* impose a duty to monitor the quality of care provided," Jett, 439 F.3d at 1099 (emphasis added).

In addition to the fact that Plaintiff fails to allege compliance with the California Tort Claims Act as required, State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1245, 90 P.3d 116, 124, 13 Cal.Rptr.3d 534, 543 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995); Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988), this case involves the theft of prescription medications, and the delays in and denials of medical care for Plaintiff's various medical conditions. The facts at issue in this action do not support a claim that Plaintiff was in need of immediate medical care and Defendants failed to summon it.

### C.     Equal Protection Claim

Plaintiff alleges that Defendants intentionally discriminated against him based on his disabilities and because he filed inmate appeals, in violation of the Equal Protection Clause, which requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985). An equal protection claim may be

9

established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Because the fifth amended complaint is devoid of any facts supporting a claim that Plaintiff was intentionally treated differently than other similarly situated inmates based on his disabilities or his engagement in filing inmate appeals, his equal protection claim is not cognizable.[2]

### D. Claims Against Defendant McKesson

Finally, Plaintiff alleges several claims against Defendant McKesson, a correctional officer, which are unrelated to his medical care claims. Plaintiff alleges Defendant McKesson denied him access to the courts, violated his rights under the Americans with Disabilities Act, retaliated against him, and moved him to a cell with another inmate who had assaulted every previous cellmate.

Plaintiff may not proceed on his claims against Defendant McKesson in this action. "The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607

---

[2] Although Plaintiff does not allege a claim for violation of the Americans with Disabilities Act, his allegations would not support a claim for relief under that theory, either. 42 U.S.C. § 12132; Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).

(7th Cir. 2007). Defendant McKesson and the claims against him should be dismissed from this action pursuant to Rule 18 on the ground that they are unrelated to the medical care claims which have formed the basis for this suit from its initiation.

**III.  Conclusion and Recommendation**

Plaintiff's fifth amended complaint states cognizable claims for relief against Defendants Bradish, Roscoe, Gonzales, and Bhatt for violation of the Eighth Amendment. However, there are no other cognizable claims stated. In light of the deficiencies at issue and the previous opportunities to amend, no further leave to amend should be granted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Accordingly, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's fifth amended complaint, filed May 18, 2009, against Defendants Bradish, Roscoe, Gonzales, and Bhatt on Plaintiff's Eighth Amendment medical care claims;

2. Plaintiff's Eighth Amendment medical care claim against Defendant Nguyen; claims against Defendants Castillo, Adams, Steinberg, and Alameida; section 845.6 claim; and equal protection claim be dismissed for failure to state a claim; and

3. Plaintiff's claims against Defendant McKesson be dismissed pursuant to Rule 18.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 7, 2010**              /s/ Sandra M. Snyder
                                            UNITED STATES MAGISTRATE JUDGE